Good morning, Your Honors. This case is about Mr. Lopez-Lopez, who was a legal permanent resident of the United States for 17 years, and consequently was placed in deportation proceedings back in 2009, and those proceedings were fundamentally unfair, which consequently has left Mr. Lopez now serving a 76-month sentence based on that invalid deportation. Now, the government in this case agrees that in order to challenge the prior deportation, multiple prongs must be met under 1326D. What is essentially in dispute between Mr. Lopez and the government is whether the deportation was fundamentally unfair. That requires two things, due process defect, and that Mr. Lopez established prejudice. We contend that he can do both. Now, in this case, the government has agreed that Mr. Lopez is fundamentally unfair. In the deportation proceeding? In the sentencing. In the sentencing hearing, the court did not. Well, so that's an error. We are arguing that that is also error. Yeah, so that doesn't mean that we should send it back for consideration of the modified categorical approach and see what happens. Well, we would contend absolutely yes. So why do we need to get into the constitutional issue if we can deal with it on a nonconstitutional issue? If the court were to remand back to have the district court examine whether under the modified categorical approach it warranted a plus 16, that would simply change Mr. Lopez's sentence in terms of how much time he's serving. If this court finds that his deportation was invalid, that would render his conviction invalid for the 1326. Ms. Conrad, how can you establish prejudice, the second part of your burden here? Well, initially when Mr. Lopez was charged under this notice to appear, the service alleged a violation of two crimes involving moral turpitude. And they relied on a conviction for vehicle code 10851 and penal code 496D, subsection A. On the face of that NTA, the service would have never met their burden because a conviction for 496DA is not a crime involving moral turpitude. And so essentially our argument is the prejudice there is he would have been deported when he was not deportable. And in support of that, I cited to the Camacho-Lopez case as well as Cervantes-Gonzalez. The government, in their brief, argues that Mr. Lopez did not have an entitlement or a right to this request for a prompt hearing. Because that's one of the basis of Mr. Lopez's arguments. If you look at the NTA, there is a specific space where it says, I request a prompt hearing. I waive my right to a 10-day hearing. And I wanted to address the fact that where the source of that derives from is AUSC 1229. And so that right does derive from a statute. And in order for the service to proceed before that 10-day period expires, they have to have Mr. Lopez's consent, his waiver to do so. And in this case, he did waive that right. He signed the form and requested an expeditious resolution of his case. He consequently was not given a deportation hearing until five weeks later. Now, the other problem with that is that at the time the deportation hearing occurred, there were a number of amendments made to the notice to appear at the actual hearing. And so even if this Court finds that the delay doesn't rise to the level of the actual hearing. Let's go back a second. Okay. When Mr. Lopez was first deported in 2009, he had been convicted of receipt of a stolen vehicle. That was an aggravated felony, was it not? Correct. So what was wrong with his deportation? Well, at the time of the deportation, initially the NCAA alleged two crimes involving moral turpitude. At the actual hearing held on October 28th, at some point the service files a handwritten amendment alleging that he was no longer relying on the two crimes involving moral turpitude, alleging an ag felony instead as the basis of deportability. All right. Now, I'm saying that amendment was deficient for a number of reasons. First of all, at the time. Did he object to the amendment? He did not object to the amendment at the hearing. So? But I think that that goes to the point that if he was not aware of what his potential relief was, then it's not necessarily an invalid waiver of appeal at the time. You have to tell me, because I'm not understanding why, if the amendment was made and there was no objection to the amendment at the time at the deportation hearing, that amendment was not valid and he wasn't validly deported. Try again. Well, the amendment did not comply both with statutory requirements and regulatory requirements. Did he seek any relief from the order of deportation? As I understand it, he came back to this country after being deported, falsely claiming that he was an American citizen. Isn't that so? That is what he was ultimately convicted of also, this false claim to U.S. citizenship. I guess I'm just not grasping your point. Well, at the time the amendment was filed, the immigration judge was required to read the amendment to Mr. Lopez. Did he take an appeal for that failure to the Board of Immigration Appeal? No, but the government is in agreement that the first two prongs are met, that he has exhausted his administrative remedies, and that the removal hearing did deprive him of the opportunity for judicial review, and that's in government's brief at 12. So the only thing in dispute between Mr. Lopez and the government is whether, in fact, there was a due process violation and whether there was, in fact, prejudice. And the due process violation consisted of the amendment shifting the ground for deportation from that of two prior crimes involving moral turpitude to one of an aggravated felony, in other words, theft of anonymity. Correct, because there were a series of errors. The judge should have read him the amendment, did not. That's mandated under the rights and the statute. The judge should have explained it to him. He did not. And Mr. Lopez inquired as to his confusion that he didn't understand what was happening. He was not given an opportunity to seek a continuance. He was not given an opportunity to retain counsel. And finally, the immigration judge orally amended the NTA on his own at one point in the proceeding. Now, at the time these hearings were held, 496-DA had not been ruled by this court. There was no binding precedent that it was, in fact, an aggravated felony. So if Mr. Lopez had been given the opportunity to retain counsel and seek a continuance, that attorney may have been able to convince the immigration judge otherwise, that either it was not an aggravated felony or that even under a modified approach the documents relied on by the service did not rise to the burden of establishing a conviction for an aggravated felony. So that would have been his prejudice. It could have potentially affected the outcome of the proceedings. And he didn't raise those points because he was pro se. He was pro se. And that's the only basis around which he didn't raise the points. Because he was not aware that he had the possibility to contest it, to ---- Do you have a case saying that when a person doesn't ---- isn't aware of the law, he doesn't have to follow it? Well, I don't think it's necessarily that proposition in itself. But this Court's series of cases, Ubaldo-Figueroa and Arrieta and Rural Incline, all stand for the proposition that if a person is unaware that they have the potential for relief at an immigration proceeding and they waive that right to appeal, it does not necessarily constitute a valid waiver. And I see I'm out of time. Thank you. Thank you. Good morning, Your Honors. May it please the Court, Mark Rahe for the United States. Your Honor, there was no invalid deportation in this case. The defense theory of the due process violation does not hold water. Primarily, their claim is that somehow this defendant had a right to be deported at the exact moment of his choosing before the service had an opportunity to amend the charges of removal. That claim is squarely at odds with 8, Chapter 8 of the Code of Federal Regulations 1003.30, the first three words of which say, at any time during removal or deportation hearings or proceedings, the service can amend the charges of removal. That is what happened here. The initial notice to appear was served September 21st of 2009. The amended charge was served on October 28th, 2009, which was the date of the hearing. Given that, it's true that the defendant signed a request for a prompt hearing. But as explained in the government's brief, that at most is an expectation. There is no Speedy Trial Act analog for the immigration context. And in fact, my opponent referred to 8 U.S.C. 1229 as the statute from which these timing requirement allegedly derives. I would point the court to 8 U.S.C. 1229, Sub D. It's titled Prompt Initiation of Removal. Consists of two subsections. In the first, it says, in the case of an alien who is convicted of an offense, which makes the alien deportable, the Attorney General shall begin any removal proceeding as expeditiously as possible after the date of the conviction. More importantly, subsection 2, nothing in this subsection shall be construed to create any substantive or procedural right or benefit that is legally enforceable by any party against the United States. As we all know, Congress has plenary power over immigration. This is an unequivocal statement by Congress directing the Homeland Security to begin proceedings as expeditiously as possible, but then stating in plain language that there is no speedy trial analog right that can form a due process claim against the United States. So the government would submit that that statutory section is dispositive of the defense claim of an undue delay. And we'd also point out there was only a five-week delay here, if you want to call it that, between the service of the notice to appear originally on September 21st and the hearing on October 28th. The Supreme Court has noted statistics that indicate that the average length of custody for a criminal alien is upwards of 47 days. That's six weeks. Here it was five weeks. So I don't, unless the Court has any further questions about the delay, I don't believe that that can support any claim of due process. Now, as far as the amendment itself, the defense notes, I believe, five separate claims of how she finds that amendment deficient. Now, of course, even assuming at the outset that she's right about all of them, she still has to show prejudice. And there is no dispute here that this defendant had an April 2008 conviction under Cal Penal Code 496D, Sub A, for which she received 16 months in prison of receipt of a stolen vehicle. Although my opponent argues that, well, this Court hadn't yet held that that specific subsection was an aggravated felony by the time of the removal hearing, a couple points in reply. First of all, even without regard to any case law, the plain language of AUSC 1101, A43, Sub G, indicates that an aggravated felony includes a theft offense, and then it has parenthesis, including receipt of stolen property, for which the sentence was at least one year. By the plain language of that provision, that's exactly what conviction this defendant had. This is a categorically an aggravated felony. Absolutely. Not only by that plain language, not only by this Court's decision in 2010 under Alvarez-Renaga v. Holder, but even before, California Penal Code has a 496 Sub A. And in 2009, before this removal hearing and the Verduzco case v. Holder that's cited in the government's brief, this Court had already held that 496 Sub A is a categorical aggravated felony. The only difference between 496 Sub A and 496D Sub A is that the first one refers to receipt of stolen property in general, whereas the particular conviction the defendant had is narrowly limited to motor vehicles, receipt of a stolen motor vehicle only. But as this Court held then in the Alvarez case, the two statutes are essentially identical. And finally, we cite authority in our brief when this Court or any court construes the meaning of a statute, it's saying what that statute has meant since day one, i.e., it gives it retroactive effects. So here there should be no legal dispute whatsoever that this particular conviction was an aggravated felony. And as the law of this circuit has been clear for years, that, unfortunately for the defendant, precludes him from any discretionary relief from removal, including the one form of relief that's at the centerpiece of the defense briefing, pre-conclusion voluntary departure. So getting back a few minutes ago when I was saying even my opponent raises five problems with the amendment, of course, as set forth in the government's brief, we dispute that any of those problems actually rose to the level of a due process violation. For instance, the first claim is that it has to be personally served on the alien. We point to evidence, I believe it's at supplemental excerpt of the record, page 77, where the immigration judge specifically says the paper that was handed to you today and then he describes the charges. And also, if you look at the face of that amendment, it's dated October 28, 2009. That's the same date that the parties all agreed this removal hearing happened. So that's circumstantial evidence from which to infer there was personal service. I know then also my opponent claims, well, the immigration judge didn't read and explain the charges. Actually, if you look at supplemental excerpt of record 77 again, this immigration judge, he had two goes at it. He tried to explain it twice. The first time the defendant said he didn't understand, and the I.J. didn't ignore him. He then said it in plain English, well, what they are saying is that you are subject to deportation because you have been convicted of a crime that involves receiving stolen property, and then you got a year or more as a sentence. Is that true, sir? Yes, sir. So our position is that the immigration judge, instead of steamrolling this defendant, took the time to explain the charges. So again, it doesn't even rise to the level of a due process violation. And the government will submit on its briefing with the rest of the claims of deficiency in the amendment. But again, if there's the one point that I believe this Court's already aware, there has to be a showing of prejudice. If here there's no dispute that this conviction that this defendant had was an aggravated felony, that takes all the prejudice off the books. And two more points. I know my opponent submitted a Rule 28J letter about a week ago, where it looked like she was also adding a rights of counsel violation, claimed that there was a mass silent waiver. Of course, the government would say that that being raised for the first time in Rule 28J is waived. May I interrupt you just a second, because I see you've only got two minutes. Do you want to address the sentencing issue? Absolutely, Your Honor. Do you think that we should remand for resentencing, or do you think that the sentencing error, which I think you agree, there was a sentencing error, was harmful or harmless? There should be no remand. The government's position is this was harmless. Not only do we argue that this was invited error because the defense counsel specifically filed a document agreeing to the 16-level increase. The government's position is there is no prejudice to substantial rights under the third prong of plain error review, and also there is no harm to the integrity of judicial proceedings under the fourth prong. And why do we say that? The PSR expressly set forth that this defendant had a conviction not under, not only under 11352 of the California Health and Safety Code, which we agree is categorically over. Possession for giving away. Well, 11351 is possession for giving away. The reason 1151 is possession for sale. For sale. I'm sorry, Your Honor. I'm just supposed to do this. Very good. The reason the 11352 is overbroad is because it also includes transportation, which is what 11351 doesn't reach. Well, he said that, you know, the judge concluded that it fell under the categorical classification, right? Right. That was incorrect. It was. Yeah. And if you look at the sentencing chart summary, and he did put in plus 16. Correct. Let me see. Am I looking at the government's one? And so did the government. And nowhere do they state the underlying conviction. I'm sure. And we have cases that tell us that in the, should have gone, he was wrong in saying it was a categorical approach, and he should have gone to the non-categorical approach. He should have taken that up. Right. But that wasn't done. No, no. Was it done or not? It wasn't done, Your Honor. But the claim wasn't preserved. It was error. It was error, but it's not plain error. Why? Because the third and fourth prongs aren't met. There's no prejudice to substantial rights because at PSR 13, the probation officer says this defendant also had a conviction under 11351, for which he received three years in prison. Supplemental Excerpt to Record 55, the rap sheet indicates the same conviction with the three-year sentence, no objection from defense counsel. So, you know, we're in a very technical area here, huh? And we want the judges to do it right. Now, this judge did not do it right. And the prosecutor didn't do it right either. So, and now Lopez is complaining that all of this was not explained to him, the consequences of his plea, and he's making a collateral attack. And the judge's job is to advise him. That's part of the judge's job, right? Absolutely. Advise him clearly and thoroughly, huh? And I don't know that that was done here. The sentencing was not done the way it should have been done. And I say that we send it back and let them do it right and not get into this harmless error thing, you know, which is, you know, it's a cure for every error that prosecutors make, and they make plenty of them, and the judges make. So they need to get it right. Now, what's wrong with that? What's wrong with sending it back to the judge and saying, you didn't do it right, huh? It's obvious, it's clear that you didn't do it right. Now do it right.  When it goes back there, huh? This is a person who's been in this country since he was eight days old. Correct. Eight days old. Who committed crimes for 12 of those years, Your Honor. What? Who committed crimes for 12 of those years. And you ask me what problem I have. But that isn't the point. He's not a good guy, all right? That's the way you feel about it. But we've still got to do things correctly, that's all. And this court has had a precedent for 30 years at least that this court can affirm on any basis supported by the record. And futile remands that kill resources are not to be favored. What did you say about resources? Remands that waste judicial resources are not to be favored. Those only got to do it right, and there's no waste of resources. But, Your Honor, how's the record in front of you? We wouldn't get this case on appeal. You know, by not doing it right, those are the resources that were being wasted. And we heard that the government argued the other day that when it comes to wasting resources in another context that talks about trials, you know, it's extended to appellate courts. So you're wasting our resources. Your Honor, they brought a challenge to the conviction. This appeal was coming no matter what. If you want to send this back, I'll guarantee you that we're going to get the same sentence, not only from that $11.25 million. How can you guarantee that? Because he also has a crime, 273.5, infliction of corporal injury to spouse that this court held in United States v. Mark O'Uno is also a categorical plus 16. And if this court can affirm on any basis having support in the record, where the defense had rejected. Why should we have to do that? Why shouldn't they do it right in the first place? You know, I've known you a long time. You're very good. There are very good lawyers down in San Diego. Among the best, you know. And the reason that you're among the best is because you've got good defense counsel there that keeps you on your toes. Agreed. It takes two, you know. Get two good teams, they both become better and better. So had it been done correctly, we wouldn't have had to go through all of this. This is not an easy case. I went to bed at 2 o'clock last night. So you've wasted my sleep, too. We had a lot of tough ones today. Mr. Barrett, is this as simple as I have the pre-sentence amended? This is a shortened pre-sentence, I take it. I'm at page four of the pre-sentence. Count two is a conviction under 1152, which the judge, the government, and defense counsel used to enhance here. Every one of you, the three of you, that was a categorical Taylor-type trigger to give you the 16 points. Am I correct? I will assume so. I think, as Judge Ferguson pointed out, our sentencing summary chart, as well as theirs, is a plus 16 where we didn't specify the exact number. Right. And that's listed as count two under the pre-sentence. But, in fact, count three is a categorical drug felony, isn't it? That is correct. Okay. That gets 16 points as well, doesn't it, under the guideline? That is the government's position, yes. Okay. So that would support your argument that prong three of the Olano plain error test has not been met, that he gets 16 points for conviction of count three. And, by the way, I think that's a mandatory minimum sentence, which gets you over the 13 months requirement for the guideline, doesn't it? Under California law, I think that is correct. Yes. So the person, López López, got at least 13 months by virtue of a mandatory minimum statute, which means that there's no error in the sentencing, even though the judge didn't use Taylor correctly. Am I right? That is the government's position. Okay. All right. Thank you. I know in the reply brief the defense says, Well, how do you know that three-year sentence was for the 11351 instead of the 11352? Two quick points, and then I will sit down. PSR 12, the probation officer says, 11351, for which he got three years in prison, defense counsel admitted his sentencing, no objections to the PSR. Facts that are not objected to in PSR can be taken as conclusively proven. And, secondly, she says, supplemental excerpt of record 55, we point out the RAF sheet. In the reply brief at page 11, the defense says, That's not a judicially noticeable document under Shepard. That's not the purpose for which it's used. In United States v. Langer, 618F3rd1044, this Court held that where there is no contrary evidence and where there's no reason to doubt a RAF sheet, it is sufficient by itself to prove the length of the sentence for a criminal history calculation. Unless there are any further questions, the government appreciates the extra time. We will submit. Thank you. Thank you. What did you say? Unless you have further questions, I will submit. All right. All right. That is submitted. Thanks.
judges: Pratt, Pregerson, Bea